IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| EUGENE COOPER, ) <br> also known as Eugene E. Cooper, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> MATTHEW B. HAMIDULLAH in his individual ) <br> capacity; DAVID GARCIA, in his individual capacity; ) <br> ) <br> Defendants. ) <br> _____ ) | C/A No. 4:07-00113-TLW-TER <br><br><br> REPORT AND <br> RECOMMENDATION |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Eugene Cooper ("plaintiff/Cooper"), filed this action under 42 U.S.C. § 1983[1] on January 12, 2007. At all times relevant to the allegations in the plaintiff's complaint, he was an inmate at the Federal Correctional Institution Estill, South Carolina. Plaintiff alleges that his constitutional rights were violated due to medical indifference. On May 7, 2007, defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum and exhibits in support of that motion (document #16).  Because the plaintiff is proceeding pro se, he was advised on or about May 8, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

filed several motions but did not file a response to the motion for summary judgment. An Order was entered on January 28, 2008, ruling on the outstanding non-dispositive motions and instructing plaintiff that he had ten (10) days from the date of that order to file a response to the motion for summary judgment pursuant to the Roseboro Order or his case may be dismissed for failure to prosecute pursuant to Rule 41b of the Federal Rules of Civil Procedure. The plaintiff failed to file a response in opposition.

## A. RULE 41(B) DISMISSAL

A complaint may be dismissed pursuant to Rule 41 (b) of the Federal Rules of Civil Procedure for failure to prosecute and/or failure to comply with orders of the court. Ballard v. Carlson, 882 F.2d 93 (4th Cir. 1989), cert. denied 493 U.S. 1084 (1990) and Chandler Leasing Corp. v. Lopez, 669 F.2d 919 (4th Cir. 1982). In considering whether to dismiss an action pursuant to Rule 41(b), the court is required to consider four factors:

(1)  the degree of plaintiff's responsibility in failing to respond;

(2)  the amount of prejudice to the defendant;

(3)  the history of the plaintiff in proceeding in a dilatory manner; and,

(4)  the existence of less drastic sanctions other than dismissal.

Davis v. Williams, 588 F.2d 69 (4th Cir. 1978).

In the present case, the plaintiff is proceeding pro se so he is entirely responsible for his actions. It is solely through plaintiff's neglect, and not that of an attorney, that no responses have been filed to the motion for summary judgment. Plaintiff has not responded to defendants' motion for summary judgment, or the court's order requiring him to respond. The undersigned concludes the

2

plaintiff has abandoned his lawsuit. No other reasonable sanctions are available. Accordingly, it is recommended that this action be dismissed pursuant to Fed. R. Civ. Proc. 41(b).

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The undersigned recommends dismissal of the complaint pursuant to Fed. R. Civ. 41(b) as set forth above. In addition to this recommendation, the undersigned will also discuss the merits of the plaintiff's claims.

The plaintiff alleges that his constitutional rights were violated due to a deliberate indifference to his medical needs. Specifically, plaintiff alleges the defendants violated his constitutional rights with respect to medical treatment for his skin condition. Plaintiff seeks a judgment against each defendant for compensatory and punitive damages in the amount of One Million Dollars ($1,000,000.00). (Complaint).

As stated above, defendants filed a motion for summary judgment asserting there was no deliberate indifference to plaintiff's medical needs, qualified immunity, no constitutional violation, and failure to state a claim upon which relief can be granted based on sovereign immunity.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The

requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted. Fed. R. Civ. P. 56©.  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56©.  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56© because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.  SOVEREIGN IMMUNITY

Plaintiff argues that he was denied adequate medical treatment for bumps on multiple parts of his body.

4

Defendants filed a motion for summary judgment and attached a copy of plaintiff's medical record and the declarations of both Robert Garcia and Matthew Hamudillah. (Defendants' Exhibits 2, 4, and 5). Defendants assert that the defendants are staff of the Bureau of Prisons with Matthew Hamidullah being the former warden at the FCI Estill, and David Garcia is a Physician's Assistant (PA) at FCI Estill.

Defendants first assert that the allegations in plaintiff's complaint relate to actions the defendants took in their official capacity. Thus, defendants argue that this action is brought under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). Defendants argue that plaintiff's allegations stem from assertions that defendants have a duty to provide him with proper and adequate medical care which stems from their employment, not from any personal obligation of the defendants. Thus, defendants assert that by naming the employees, he is actually bringing suit against the United States and that the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued. As the United States has not consented to be sued, defendants argue the courts lack jurisdiction over plaintiff's claims against the defendant in their official capacities and the claims should be dismissed.

Suits against federal officials may not be brought under § 1983. District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971); see Radin v. United States, 699 F.2d 681, 684 (4th Cir. 1983) (Bivens recognized an action against federal officers sued in individual capacities, but not against the United States). Plaintiff's Bivens action cannot lie against the United States nor against the individual defendants in their official

5

capacities. *See* United States v. Mitchell, 463 U.S. 206, 212 (1983) (the United States cannot be sued without its express consent .); Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.1983) (*Bivens* does not allow for recovery of money damages, or suits in general, against the government itself.). Thus, to the extent defendants are being sued under Bivens in their official capacities, the claims are barred by the doctrine of sovereign immunity. Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. Gilbert v. Da Grossa, 756 F.2d 1455, 1459 (citing Davis v. Passman, 442 U.S. 228(1979); Bivens, supra. Thus, to the extent defendants are being sued in their individual capacities under Bivens, plaintiff's claims are not barred by the doctrine of sovereign immunity.

### D.  MEDICAL INDIFFERENCE

In his complaint, plaintiff alleges that in January 2005, he submitted numerous sick call requests to be seen because of bumps breaking out upon his body causing him to itch. Plaintiff alleges on March 29, 2005, during sick call, he was seen by defendant Garcia who diagnosed him with dermatitis and prescribed Triaminacolone ointment. Plaintiff asserts that the bumps began to appear on his neck and face and he submitted numerous sick call requests but was not seen until November 3, 2005, during sick call by defendant Garcia. On this date, plaintiff contends that defendant Garcia diagnosed him with folliculitis and he was prescribed Doxcyclinehyclate 100 mg. Plaintiff alleges that his condition began to worsen and he submitted numerous sick call requests and filed grievances but has not received any medical attention from the defendants regarding his skin condition since November 3, 2005. Plaintiff attached copies of requests for administrative remedies

and the responses. It is noted in one of plaintiff's appeals to the administrative remedy that he asserted he missed his appointments due to "lockdown-fog counts." (Attachment to complaint).

Defendants assert that based on plaintiff's records, he arrived at FCI Estill on March 29, 2002. Defendants assert that at that time, as with each of the BOP's facilities, FCI Estill had sick call procedures in place for inmates who wanted to be seen by medical staff for medical complaints. Defendants contend that when an inmate wanted to be seen by medical staff for a medical complaint that was not urgent, the inmate would report to the Health Services Department during scheduled sick call hours from 6:30 a.m. to 7:00 a.m. on Mondays, Tuesdays, Thursdays, or Fridays. (Defendants' Exhibit 3, FCI Estill Health Services Department Medical Procedures Manual). Inmates were assessed by medical staff and inmates with minor medical issues (Athletes foot, dermatitis, common colds, flu) were given a future scheduled appointment by the triaging medical staff. Defendants assert that prior to their scheduled appointment, triage staff may examine the inmate and provide medication accordingly. (Id.). Defendants contend that plaintiff was seen by defendant Garcia during sick call on March 29, 2005, and treated with an ointment for the bumps on his arms. Defendants further assert plaintiff was seen again in November 2005 by defendant Garcia during sick call and prescribed medication for the bumps and diagnosed as having acne. Defendants argue that there was no medical indifference to plaintiff's needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical

7

> needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825

(1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v.

9

Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

The plaintiff has failed to show that he was denied medical treatment. In his complaint, plaintiff alleges he was seen by Garcia on March 29, 2005, and November 3, 2005, and received treatment but asserts that his condition began to worsen and the bumps caused him to itch and prevented his sleep and other activities. Plaintiff alleges that he submitted numerous sick call requests but has not been seen since November 2005 regarding his skin condition. However, based on the medical records and declarations submitted, there is nothing in the record to substantiate plaintiff's allegations that he complained to defendant Garcia that his sick call requests were being ignored or that the prescribed treatment was not helping. (See Garcia's declaration). As defendants argued, the medical record is void of any complaints by plaintiff to any medical staff regarding his skin condition worsening. (Id.). The records indicate that plaintiff failed to show up for his appointment with medical on June 9, 2005, and on December 12, 2005, and again on February 3, 2006. Based on the plaintiff's medical records and the declaration of PA Garcia, plaintiff was seen in the Health Services Department by Garcia on March 29, 2005, complaining of multiple bumps on both of his arms. (See Defendants' Exhibit 2, medical records; Exhibit 4, declaration of David Garcia). Plaintiff was examined by P.A. Garcia who assessed plaintiff with dermatitis for which he prescribed a topical steroid ointment for the itching. Plaintiff was instructed to apply the ointment to the affected area twice daily and educated on the importance of personal hygiene in order to

prevent the dermatitis. (Id.) Plaintiff was also given a follow-up appointment for June 9, 2005, to see his primary provider who was not defendant Garcia, and advised that he could return if needed prior to that scheduled appointment. (Id.) On June 9, 2005, plaintiff failed to show up for his scheduled appointment. (Id.). Based on the records and declaration submitted, plaintiff did not report back to the Health Services Department from the March 29, 2005, visit until he signed up for sick call on November 3, 2005, complaining of bumps on his back, neck, and face. (Id.). Even though plaintiff stated on the sick call request that he had bumps for over a year, there are no other entries in the medical records provided that indicates he reported to the Health Department for the skin condition since March 29, 2005. (Garcia declaration). Further, plaintiff indicated on the medical form that he was in no pain by circling a zero on the Pain Management Assessment. (See Exhibits 2 and 4). Defendant Garcia examined plaintiff and diagnosed him with folliculitis or acne for which Garcia prescribed Vibromycin to take orally and a triple antibiotic ointment to apply to the affected are. (Id.). Plaintiff was instructed to return to the medical department if the symptoms continued. (Id.) Based on the evidence presented by defendants, plaintiff was scheduled for sick call on two more occasions and did not show up for either appointment. (Id.).

As held in Estelle, 429 U.S. at 107, a complaint of negligence in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury. Additionally, plaintiff has failed to show that he had a serious medical need of which defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these defendants

"shocks the conscious" as required by <u>Miltier v. Beorn</u>, <u>supra</u>. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" <u>Jackson v. Fair</u>, <u>supra.</u> The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. <u>Brown v. Thompson</u>, <u>supra</u>. Any disagreement between an inmate and medical personnel fails to state a claim unless exceptional circumstances are alleged . . . Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. <u>Russell v.Sheffer</u>, <u>supra</u>.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. For the above stated reasons, summary judgment should be granted in favor of defendants on this issue.

### E.  SUPERVISORY LIABILITY

Defendants assert that it is well settled that liability in <u>Bivens</u> or 42 U.S.C. §1983 cases may not be premised upon a respondeat superior theory. Defendants argue that supervisory personnel cannot be held vicariously liable for the acts of their subordinates under respondeat superior unless they were personally involved in or participated in the unconstitutional acts. <u>Rizzo v. Goode</u>, 423 U.S. 362, 378-80 (1976).

The doctrine of respondeat superior cannot form the basis of a claim for violations of a constitutional right in any <u>Bivens</u> action. <u>Rizzo v. Goode</u>, <u>supra</u>.  Liability may not be imposed on an individual in a <u>Bivens</u> action without a showing of that individual's personal responsibility for the constitutional violation. <u>Dewalt v. Carter</u>, 224 F.3d 607 (7th Cir.2000); <u>Bentley v. Beck</u>, 625 F.2d

12

70 (5th Cir.1980). Only federal officials who actually participated in the alleged unconstitutional behavior are appropriate parties in a Bivens suit. *Id.* Hence, a federal official cannot be held vicariously liable for the acts of his/her subordinates under the doctrine of "respondeat superior." See Rizzo v. Goode,, supra;  Ward v. Johnson, 667 F.2d 1126 (4th Cir.1981).

Supervisory liability requires showing that supervisory officials failed promptly to provide inmate with needed medical care, deliberately interfered with prison doctors' performance, tacitly authorized or were indifferent to prison physicians' constitutional violations, Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), or were responsible of alleged training deficiencies which caused harm, Mitchell v. Alluisi, 872 F.2d 577, 581 (4th Cir.1989). Supervisory officials are entitled to rely on medical judgments made by prison physicians. Miltier, 896 F.2d at 854-55; see also Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) (no supervisory liability when there was no evidence defendants knew inmate was deprived of wheelchair, which was removed at the direction of prison psychologist).

Hamidullah submitted his declaration stating that plaintiff has not made any specific allegations against him and, as the Warden, he did not personally provide medical care for the inmate population and that all medical decision were left within the sole expertise and discretion of the qualified medical staff at FCI Estill. Hamidullah declares that he does not have a degree or any specialized training in the medical field and does not possess the requisite medical knowledge to overrule the professional and informed decisions made by the medical staff. Hamidullah declares that the only involvement he had with plaintiff regarding being denied proper medical treatment was to review and sign an administrative remedy response. Hamidullah declares that a review of SENTRY indicates plaintiff filed an administrative remedy dated April 11, 2006, alleging his Eighth

13

Amendment rights had been violated because medical staff deliberately ignored and failed to diagnosis and treat his medical complaints. Hamidullah asserts that after an investigation by medical staff, he fully supported the recommendation of the medical staff to deny plaintiff's Administrative Remedy Request. Hamidullah declares that while he was the Warden at FCI Estill, he never acted deliberately indifferent to plaintiff's serious medical needs.  (Hamidullah declaration, defendants' exhibit 5).

Plaintiff has failed to make sufficient allegations against defendant Hamidullah in the complaint and has failed to establish a constitutional violation. Thus, it is recommended that summary judgment be granted for defendant Hamidullah on the theory of supervisory liability.

### III. CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  As well, the plaintiff has failed to prosecute his action by not responding to the motion for summary judgment filed by the defendants and has failed to comply with an order of the court under Rule 41(b) of the Federal Rules of Civil Procedure.   It is therefore,

**RECOMMENDED** that the motion filed by the defendants for summary judgment (document #16) be **GRANTED IN ITS ENTIRETY**  and that this matter be **DISMISSED** as no constitutional or statutory rights have been violated.

    Respectfully submitted,

    s/Thomas E. Rogers, III
    Thomas E. Rogers III
    United States Magistrate Judge

February 4, 2008
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**